Winter 2008

# Fair Housing News

Fair Housing: It's Not an Option, It's the Law!

EQUAL HOUSING OPPORTUNITY

**In this issue:**


- Seattle HA Agrees to Make 263 Units Accessible for Persons with Disabilities
- Las Vegas Landlords Agree to Pay $75,000 to Settle Allegations of Discrimination Against Families with Children
- HUD Negotiates $170,000 Settlement with Managers of St. Louis Apartment Complex that Allegedly Discriminated Against Families with Children
- HUD Negotiates $10,000 Settlement with Owners of CA Townhouse Complex that Allegedly Discriminated Against Hispanics
- HUD Charges AL Property Owner with Racial Discrimination
- HUD ALJ Orders Chicago Landlord to Pay $44,000 in Damages, $11,000 Civil Penalty for Discriminatory Ad
- Northern West Virginia Center for Independent Living is First Group in WV to Receive Fair Housing Grant


### Our Mission

*To promote equal housing opportunities for all persons in America by administering laws that prohibit discrimination in housing on the basis of race, color, religion, sex, national origin, disability, and familial status.*

## Seattle Housing Authority Agrees to Make 263 Units Accessible for Persons with Disabilities

On November 30, 2007, HUD and the Seattle Housing Authority (SHA) signed a voluntary compliance agreement (VCA) that will make SHA's public housing and related programs accessible for persons with disabilities.



The VCA is the result of a compliance review that HUD conducted in June 2006. The review examined SHA's Low-Income Public Housing (LIPH) program for compliance with Section 504 of the Rehabilitation Act and Title II of the Americans with Disabilities Act. The VCA resolves the issues identified during the review.

Under the VCA, SHA will make 263 public housing units, common entrances, laundry rooms, management offices, and other non-housing programs accessible for persons with disabilities.

Additionally, SHA will take steps to maximize the number of accessible units that are occupied by those requiring the accessible features. For example, SHA will amend its pre-application form to ask applicants with disabilities whether they need an accessible unit. SHA will also amend its admissions and occupancy policies to require that accessible units are first offered to persons with disabilities. To do this, SHA will develop

*Continued on page 3*

## Las Vegas Landlords Agree to Pay $75,000 to Settle Allegations of Discrimination Against Families with Children

On December 18, 2007, HUD settled two complaints against the owners of Summer Place Apartments located in Las Vegas, NV. The complaints alleged that the owners, Sung and Christine Yun, discriminated against families with children and persons with disabilities, in violation of the Fair Housing Act.

On December 1, 2006, Sheila Brown, a resident of Summer Place Apartments, filed a complaint with HUD alleging that she was issued an eviction notice after she informed one of the owners that her 6-year-old daughter was going to move in. HUD investigated the complaint and found that the property had a long-running policy of refusing to permit families with children. As a result, HUD filed a Secretary-initiated complaint against the owners of the property. Later, HUD amended its complaint to include an allegation of discrimination on the basis of disability when it learned that the property had allegedly failed to make reasonable accommodations for persons with disabilities.

As part of the settlements, the owners will pay a total of $75,000 to parties that were harmed by their policy regarding families with children. This includes a payment of $35,000 to Brown; a total payment of

*Continued on page 4*

## HUD Negotiates $170,000 Settlement with Managers of St. Louis Apartment Complex that Allegedly Discriminated Against Families with Children

On December 3, 2007, HUD settled seven complaints against the managers of Ridge Crest Apartments located in St. Louis, MO. The complaints alleged that the managers of Ridge Crest Apartments subjected residents with children to stricter community rules than residents without children and/or retaliated against residents with children for exercising their fair housing rights.

Between September 2006 and March 2007, HUD received six complaints alleging that the managers of Ridge Crest Apartments maintained a policy that required a parent or adult to supervise young children at all times when playing outside and applied this policy to anyone under 18 years of age. The complaints also alleged that the managers of Ridge Crest Apartments routinely threatened tenants with eviction for allowing their children to play outside unsupervised and unlawfully evicted at least one tenant. In August 2007, HUD received an additional complaint from a tenant who alleged that the managers attempted to terminate her tenancy because her daughter served as a witness in one of the investigations.

> The complaints alleged that the managers routinely threatened tenants with eviction for allowing their children to play outside unsupervised.

As part of the settlement, the respondents will pay $83,000 in damages to the seven complainants and establish a $15,000 fund for any additional victims. The respondents will also remove or have removed any and all negative credit reporting items, rental information, and/or eviction judgments from the credit, rental, and court records of the affected complainants.

Additionally, the respondents will provide $72,000 to establish and operate an after-school program for children who live at the complex, modify their community rules and enforcement practices so that they do not discriminate against families with children, and send all employees or agents involved in the management of the property to fair housing training.

## HUD Negotiates $10,000 Settlement with Owners of California Townhouse Complex that Allegedly Discriminated Against Hispanics

On December 18, 2007, HUD settled a complaint against the owners of a HUD-assisted townhouse complex located in Ontario, CA, for allegedly discriminating against a Hispanic family, in violation of the Fair Housing Act and Title VI of the Civil Rights Act.

The complaint, filed by Miguel and Maria Ochoa and their two adult sons, alleged that Hollie Meeks, resident manager of the complex, treated the family differently because they are Hispanic. Among other things, Meeks allegedly improperly calculated their rent, overcharged them for rent, and refused to do repairs. Furthermore, Meeks allegedly harassed, yelled at, and threatened them with eviction when they requested her assistance after receiving a notice of rent increase.

Additionally, the complaint alleged that Meeks refused to provide language assistance to the complainants and other Spanish-speaking tenants.

The complainants contended that Meeks subjected them and other Hispanic families to different terms and conditions in an effort to evict them and replace them with African-American tenants, some of whom were relatives of the manager. As a result, the complex changed from being predominately Hispanic to predominately African American.

As part of the settlement, the owners of the complex, Ontario Townhouses



Limited Partnership and Edgewood Management Corporation, deny any wrongdoing, but will pay $10,344 to the complainants and terminate Meeks.

The owners will also provide oral interpretation services, display and maintain fair housing posters in English and Spanish, and have the new resident manager and other staff attend fair housing training.

## HUD Charges Alabama Property Owner with Racial Discrimination

On November 8, 2007, HUD charged Neysa Crim, the owner of a two-bedroom house located in Decatur, AL, with violating the Fair Housing Act for refusing to rent to an African-American home seeker.

Jimmy Lewis Crump, an African-American male, saw a "For Rent" sign posted in the yard of the subject property. Crump called the number three or four times to inquire about renting the unit. However, he got a voice recording each time he called. Nearly every time he called, he left a message expressing his interest in renting the unit and a telephone number where he could be reached. He never received a return call.

Later, Crump spoke to his work supervisor, a white female, about his interest in renting the subject property and lack of response. His supervisor offered to call the number and inquire about the unit. Crump then called and left another message. His supervisor then called and, as she was leaving a message,

> The owner stated that she did not want to rent to a black person because the house was located in a white neighborhood.

Crim answered the phone. Crump's supervisor informed Crim that she was inquiring about the subject property for a friend. Crim asked the supervisor, "What color is he?" When Crump's supervisor asked Crim what she meant, she replied, "Is he black or white?"

Crim further stated that she did not want to rent the subject property to a black person because the property was located in a predominately white neighborhood and she did not want her neighbors trashing or damaging her property because she had rented to a black.

Crump filed a complaint with HUD, who investigated the complaint and found reasonable cause to believe that a discriminatory housing practice had occurred. The charge will be heard before an administrative law judge unless either party elects to proceed in federal district court.

## HUD ALJ Orders Chicago Landlord to Pay $43,000 in Damages, $11,000 Civil Penalty for Discriminatory Ad

On December 21, 2007, a HUD Administrative Law Judge (ALJ) issued a decision ordering a Chicago, IL, landlord to pay a total of $43,394.16 in damages and an $11,000 civil penalty for violating the Fair Housing Act.

On August 1, 2006, Lolita Lindo, the mother of a 10 year-old son, filed a complaint with HUD that alleged that Janusz Godlewski, the owner of a three-family dwelling, posted a "for rent" sign that stated "no kids." HUD investigated the complaint and found that even though Godlewski was exempt from the Fair Housing Act's provisions against discrimination because the building contains no more than four units and Godlewski resides at the property, he violated the Act by posting a discriminatory advertisement. The Fair Housing Act explicitly bans those exempt from the other provisions of the Act from making discriminatory statements, notices, and advertisements.

On April 24, 2007, HUD issued a charge of discrimination against Godlewski. He did not show up and was not represented at a hearing before an ALJ, so the ALJ entered a default judgment against him.

Godlewski also failed to appear or be represented at a hearing on damages. Following this hearing, the ALJ ordered Godlewski to pay $20,000 to Lindo for emotional stress. The evidence showed that at the time she saw the advertisement, Lindo was under enormous pressure to find suitable housing and suffered from migraine headaches as a result of the advertisement. The ALJ also ordered Godlewski to pay $23,394.16 in damages and $56,742 in attorney fees to the Chicago Lawyers' Committee for Civil Rights Under Law, who had assisted Lindo. Additionally, the ALJ ordered Godlewski to pay an $11,000 civil penalty and prohibited him from disposing of the subject property or any other real property until he has satisfied the judgment.

*Continued from page 1*

and maintain a computerized waiting list that documents the needs of applicants with disabilities and a computerized transfer list that prioritizes the transfer of residents with disabilities to accessible units. In addition, SHA will pay reasonable moving expenses for residents with disabilities who require a transfer to another SHA development as a reasonable accommodation.

Furthermore, the VCA requires SHA to amend its pet policy so that it does not require residents with disabilities to submit training certification for assistance animals. Additionally, SHA must ensure that persons with hearing, visual, or cognitive disabilities can obtain information on accessible services and facilities.

To ensure compliance with the VCA and applicable civil rights laws, SHA will hire a VCA administrator and a Section 504/ADA coordinator and send current and new employees to fair housing training.

## HUD's Office of Fair Housing and Equal Opportunity

**451 7th Street, SW**
**Washington, DC 20410**

**Individuals may report housing discrimination to HUD by calling**

**1-800-669-9777 (Voice)**
**1-800-927-9275 (TTY)**

**or by completing a form at**

**www.hud.gov/fairhousing**

EQUAL HOUSING OPPORTUNITY

# Northern West Virginia Center for Independent Living is First Group in WV to Receive Fair Housing Grant

On November 6, 2007, HUD presented a ceremonial check in the amount of $99,976 to the Northern West Virginia Center for Independent Living (NWVCIL). The grant, awarded through the Fair Housing Initiatives Program (FHIP), will be used to conduct fair housing education and outreach in West Virginia. NWVCIL is the first organization in the state to be awarded a FHIP grant. In total, HUD awarded 88 grants totaling $18.1 million to groups in 36 states and the District of Columbia.



**From left to right: HUD Philadelphia Special Assistant Elvis Solivan, HUD Philadelphia Director for Fair Housing Wanda Nieves, HUD Charleston Director Peter Minter, and Assistant Secretary Kim Kendrick present a ceremonial check to Jan Derry, Executive Director for the Northern West Virginia Center for Independent Living**

Specifically, NWVCIL will partner with local human rights commissions to conduct fair housing workshops, publish fair housing articles, and launch a statewide media campaign. In addition, NWVCIL will conduct research on housing discrimination against persons with disabilities, collect data on the availability of accessible housing in West Virginia, and assist victims of discrimination with filing complaints.

HUD's Headquarters Office of Fair Housing and Equal Opportunity is proud to report that it has raised over $26,000 as part of the Combined Federal Campaign, surpassing its goal by 35 percent.

The money raised will go to nonprofit organizations that provide health and human services throughout the world.

From April 8-11, 2008, HUD will hold its National Fair Housing Policy Conference in Atlanta, GA.

The theme of the conference is "On the Sunlit Path." "On the Sunlit Path" comes from Rev. Dr. Martin Luther King, Jr.'s speech, "I Have A Dream," where he said, "Now is the time to rise from the dark and desolate valley of segregation to the **sunlit path** of racial justice. Now is the time to lift our nation from the quicksands of racial injustice…" The conference will discuss ways to promote Dr. King's vision for equality and justice in housing.

For more information, go to http://www.fheopolicyconference.com.

*Continued from page 1*

$10,500 to three individuals who had to move because of the policy against children; and a trust in the amount of $29,500 to compensate applicants or tenants of Summer Place Apartments that are later identified as having been denied housing or who were told to move because they had a child or were pregnant. The owners will sponsor advertisements in English and Spanish publications to inform the public of the settlement and the compensation available from the trust.

Additionally, the owners will modify their occupancy policy so that it does not exclude people below 18 years of age, develop a reasonable accommodation policy, and send themselves and others involved in the management of Summer Place Apartments to fair housing training.